IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-466-BO

| | |
|---|---|
| ANDREW PRESSON and KIMBERLY MYRIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RECOVERY CONNECTIONS COMMUNITY; JOURNEY TO RECOVERY, LLC; JENNIFER A. WARREN; PHILLIP J. WARREN; 3M & N, INC. d/b/a ZAXBY'S; WESTERN NORTH CAROLINA LIONS, INC. d/b/a MARJORIE MCCUNE MEMORIAL CENTER; INTEGRITY-HOMINY VALLEY, LLC d/b/a HOMINY VALLEY RETIREMENT CENTER; INTEGRITY-CANDLER 02 LLC d/b/a HOMINY VALLEY RETIREMENT CENTER; INTEGRITY-CANDLER LIVING CENTER, LLC d/b/a CANDLER LIVING CENTER; INTEGRITY-CANDLER 01 LLC d/b/a CANDLER LIVING CENTER; INTEGRITY SENIOR PROPERTIES INVESTMENTS, LLC; CEDARBROOK RESIDENTIAL CENTER, INC.; and THE AUTUMN GROUP, INC. d/b/a OAK HILL LIVING CENTER,<br><br>Defendants. | O R D E R |

This cause comes before the Court on plaintiffs' motion for Court-authorized notice pursuant to 29 U.S.C. § 216(b). Two sets of defendants have filed oppositions to the motions, plaintiffs have replied, and the matter is ripe for ruling. For the reasons that follow, plaintiffs' motion is granted.

## BACKGROUND

Plaintiffs instituted this action by filing a complaint on September 27, 2018, alleging collective action claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, for unpaid minimum wage and overtime wages and alternatively alleging class action claims for violations of the North Carolina Wage and Hour Act. N.C. Gen. Stat. § 95-25.1, *et seq.* and 13 N.C. Admin. Code 12.0100, *et seq.* Plaintiffs further allege claims for unjust enrichment, unfair and deceptive trade practices, N.C. Gen. Stat. § 75-1.1, and conversion. *See* [DE 1].

The following is derived from the allegations in the complaint. Defendant Recovery Connections Community (RCC) is a residential substance abuse recovery provider operated under the common control of defendants Jennifer and Phillip Warren. There are five RCC substance abuse rehabilitation homes which are located in Asheville, Angier, Fairview, and Black Mountain, North Carolina. Defendant Journey to Recovery is a limited liability corporation which holds itself out as a substance abuse counseling provider and whose president and chief executive officer is defendant Phillip Warren.

RCC residents are individuals with substance abuse and addiction disorders who live in RCC homes in order to receive substance abuse education, addiction assessments by professionals, life skills, vocational training, community support groups, and animal and equine therapy. The standard enrollment period for RCC residents is two years. As a condition of residency, RCC program participants are required to perform labor and work both for RCC and at local offsite businesses. These offsite businesses with whom RCC contracts to provide resident labor include the remaining defendants, which are a restaurant and several adult care homes.

Plaintiffs allege that RCC fails to provide therapeutic treatment and training to its residents, and instead requires them to perform arduous labor for long hours without pay. Plaintiffs have summarized the complained of conduct as follows:

> While operating under the guise of a residential substance abuse recovery provider, Defendant [RCC] requires its program residents to work long hours—up to 16 hours per day—for area businesses, and then pockets the residents' wages for its own benefit. The businesses that contract with Recovery Connections benefit from this scheme by receiving access to a pool of sub-market rate labor performed by Recovery Connections residents. These businesses pay Recovery Connections a negotiated rate for the labor pool's work, knowing that the Recovery Connections residents receive no compensation for their labor. Recovery Connection's deceptive marketing of itself as a substance abuse recovery service provider, and Defendants' practices of profiting off the unpaid labor of individuals seeking substance abuse rehabilitation are unlawful and violate public policy.

[DE 1] Cmpl. ¶ 1.

The offsite business defendants have, through counsel, answered the complaint and filed memorandums in opposition to the instant motion. Defendants Jennifer and Phillip Warren have answered the complaint *pro se* but have failed to file any memorandum in response to the instant motion. Clerk's default pursuant to Fed. R. Civ. P. 55(a) was entered against defendants RCC and Journey to Recovery on June 25, 2019.

## DISCUSSION

The FLSA expressly allows employees to maintain a collective action for, *inter alia*, "unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C. § 216(b). To bring a collective action under the FLSA, the putative plaintiffs must satisfy two requirements: (1) they must establish they are "similarly situated" and (2) they must affirmatively consent to the named plaintiff's class representation. *Id.* As to the question of whether the putative plaintiffs are

3

"similarly situated," the Court applies a two-step approach. *See Cameron-Grant v. Maxim Health Care Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003).[1]

At the first, "notice" step of the process, the Court determines whether the plaintiff and potential opt-in plaintiffs are sufficiently "similarly situated" to warrant notice being given to allow potential plaintiffs to opt-in and to proceed as a collective action through discovery; at this initial stage, a lenient standard applies. *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006) ("Because the court has minimal evidence, this determination is made using a fairly lenient standard.") (internal quotation and citation omitted); *see also Dearman v. Collegiate Hous. Servs., Inc.*, No. 517CV00057RJCDCK, 2018 WL 1566333, at *2 (W.D.N.C. Mar. 30, 2018). The focus is on whether the plaintiffs and potential opt-in plaintiffs will be "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *De Luna-Guerrero v. N. Carolina Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (quotation and citation omitted). If the Court finds the plaintiff and potential opt-in plaintiffs sufficiently similarly situated to warrant issuing notice of the collective action, the Court will conditionally certify the collective action.

The second step of the two-step approach has been described as follows:

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-*i.e.* the original plaintiffs-proceed to trial on their individual claims.

---

[1] This Court has previously found the two-step approach to determining whether putative plaintiffs are "similarly situated" to be "rational, fair, and supported by sufficient persuasive case law" and therefore applies it here. *See Ceras-Campo v. WF P'ship*, No. 5:10-CV-215-BO, 2011 WL 588417, at *2 (E.D.N.C. Feb. 9, 2011); *see also Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2016 WL 1703351, at *2 (E.D.N.C. Apr. 27, 2016).

4

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (internal footnote omitted)).

Plaintiffs have satisfied their burden at this step to show that they and other RCC residents are similarly situated and providing notice to the potential opt-in plaintiffs is appropriate. The allegations in their complaint as well as the declarations of the named plaintiffs and potential opt-in plaintiff Christopher Strube detail the experiences of RCC residents, the defendants' common policies or plans, and the same legal violations. *See* [DE 53-4; 53-5; 53-6]. Each of the declarations describe how the RCC resident was required to perform uncompensated work for RCC and the offsite businesses; that they worked in exchange for lodging, meals, and food; that they were subjected to a similar level of control by RCC and the offsite businesses while they performed work; and that they regularly worked in excess of forty-hours per week and were not compensated for overtime. *See, e.g.,* Stube Decl. ¶¶ 5-11 (describing work performed for both offsite business defendants and RCC seven days per week for a total of eighty-eight hours per week; RCC assigned Stube to shifts at the offsite businesses and both RCC and the offsite businesses trained Stube and controlled his work; and Stube was not paid nor provided a record of wages earned during his period of RCC residency).

Two groups of defendants have responded to plaintiffs' motion: (1) 3M & N which owns and operates Zaxby's restaurants (3M&N) and (2) the adult care home defendants Marjorie McCune Memorial Center, Integrity-Hominy Valley, Integrity-Candler 02, Integrity-Candler Living Center, Integrity-Candler 01, Integrity Senior Properties Investments, Cedarbrook Residential Center, and Oak Hill Living Center. In essence, both groups of offsite business defendants argue that conditional certification is inappropriate because the putative collective

action plaintiffs are not similarly situated as to the offsite business defendants and the offsite business defendants were not joint employers with the RCC defendants.

The inquiry at this step is simply whether the plaintiffs are similarly situated "with respect to their allegations that the law has been violated." *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 305 (W.D.N.C. 2013) (quotation and citation omitted). Thus, contrary to the arguments of the responding defendants, the Court need not determine whether the plaintiffs are similarly situated *as to each defendant*; that RCC residents worked for some but not others of the offsite business-defendants is not determinative of the inquiry. Nor need the Court resolve at this step whether the responding defendants were, in fact, joint employers under the FLSA. Indeed, "[i]n instances where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 806 (S.D. Tex. 2010) (quotation and citation omitted).

Insofar as the Court is required to determine that there are sufficiently plausible allegations of joint employment to support conditional certification, plaintiffs' allegations and evidence proffered to date are sufficient. There is a two-step framework for analyzing joint employment claims under the FLSA. In the first step, courts consider six non-exhaustive factors in order to determine whether separate entities are joint employers. The factors include whether the putative joint employers directly or indirectly supervise the worker, whether they share or allocate the power to hire or fire the worker, the permanency and duration of the relationship between the putative joint employers, and whether the work is performed on a premises owned or controlled by one or more of the putative joint employers. *Salinas v. Commercial Interiors,*

*Inc.*, 848 F.3d 125, 141-42 (4th Cir. 2017). In the second step, the court considers whether the worker is an employee or independent contractor of either the combined entity, if at the first step it is determined that the entities are joint employers, or of each entity, if at the first step it is determined that they are not joint employers. *Id.* at 140.

Plaintiffs' declarations and evidence supports that the offsite businesses indirectly supervised defendants RCC residents' work, that they engaged in training of RCC residents, that they exercised joint hiring and firing control with the RCC defendants, and that the relationship between RCC and the offsite businesses lasted in some instances more than two years. *See, e.g.* [DE 53-4] Presson Decl. ¶¶ 20-28 (training provided by Hominy Valley and McCune); [DE 77-2] Myris Dep. at 175-176, 205-206 (supervision by RCC resident at direction of Candler and Hominy Valley, hiring interview and training conducted by McCune); [DE 70-4] Stephenson Decl. ¶¶ 5, 22 (Oak Hill agreement with RCC in place from February 2015 to January 2018). Plaintiffs have satisfied their burden to plausibly suggest that they will be able to prove that defendants were joint employers.

Plaintiff's evidence and allegations are further sufficient at this stage to support their contention that the RCC and offsite business defendants engaged in a common or uniform policy with regard to the putative collective action members. There is no requirement that plaintiffs be able to show that the offsite businesses engaged in an employment relationship with the RCC defendants in bad faith or with the intent to avoid FLSA obligations. *Salinas*, 848 F.3d at 145. Plaintiffs have alleged and provided evidence of a common policy as between the offsite business and the RCC defendants in which the RCC defendants supplied individuals who would perform work for a wage at the offsite business. This is sufficient to conditionally certify the collective action.

7

Accordingly, the Court has determined that plaintiffs have satisfied their step one burden and that notice pursuant to 29 U.S.C. § 216(b) should issue.[2]

CONCLUSION

Plaintiffs' motion for Court-authorized notice pursuant to 29 U.S.C. § 216(b) [DE 53] is GRANTED. The collective action is conditionally certified and notice is hereby authorized to individuals who participated in the Recovery Connections Community at any time between September 27, 2015, and the date of final judgment in this action. Defendants are hereby ORDERED to produce a computer readable list of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all current and former program participants who work or have worked for RCC and any other defendant since September 27, 2015, and the last four digits of the social security numbers for collective members whose notices are returned as undeliverable. Plaintiffs shall distribute their proposed notice, consent to join form, and reminder in accordance with the notice plan described in their memorandum in support of the motion for Court-authorized notice pursuant to 29 U.S.C. § 216(b).

SO ORDERED, this _10_ day of July, 2019.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The responding defendants have not contested the specific elements plaintiffs' proposed notice and distribution plan. The adult care home defendants requested an opportunity to file specific objections to the proposed notice and plan should the Court decide to conditionally certify the collective action, but the Court has independently considered and approved plaintiffs' proposed notice and distribution plan.

8